## CLIFTON MFG. CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 5079.

Circuit Court of Appeals, Fourth Circuit.

July 16, 1943.

W. A. Sutherland, of Atlanta, Ga. (Ben F. Johnson, Jr., and Sutherland, Tuttle & Brennan, all of Atlanta Ga., on the brief), for petitioner.

Helen Goodner, Sp. Asst. to the Atty. Gen., (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SOPER, DOBIE, and NORTH-COTT, Circuit Judges.

SOPER, Circuit Judge.

Past due interest on a debt due the Clifton Manufacturing Company, the taxpayer, was collected during its fiscal year which ended March 31, 1937, and was held by the Tax Court of the United States, three members dissenting, to be taxable income in that year. The taxpayer's accounts were kept on an accrual basis; and the question is whether any part of the sum received in 1937 should have been included in the gross income of that year rather than in the gross income of an earlier year when it was due and payable and its collectibility was assured. The Commissioner included in the taxpayer's income for the fiscal year ended March 31, 1937, past due interest on the sum of $11,711.76 collected in that year, which comprised $302.19 for the fiscal year ended March 31, 1933, and $11,409.57 for the fiscal year ended March 31, 1934. No part of the sum of $11,711.76 was returned by the taxpayer as taxable income for 1937 or any other year. By the Commissioner's action deficiencies in income and excess profits taxes for the fiscal year ended March 31, 1937 were determined in the amounts of $3,006.04 and $681.01 respectively. If the sum collected in that year was properly accruable in any earlier year, the tax thereon is barred by the statute of limitations.

For many years the Hunter Manufacturing & Commission Company, a New York corporation, acted as selling agent for the taxpayer and other large textile manufacturers, and made it a practice to charge interest on debit balances and credit interest on credit balances. Hunter became financially involved during the taxpayer's fiscal year ended March 31, 1933, since it owed the principal sum of $392,651.14 to the taxpayer and large sums to other customers. Consequently Hunter was put into the hands of receivers for purposes of liquidation. It was thought at the time that Hunter would pay about fifty per cent on its indebtedness to the mills and that the best way to liquidate its remaining assets would be to form a new company in which the creditors would purchase stock. Later on, during the next fiscal year of the taxpayer while the reorganization was still in progress the situation became more hopeful and it seemed likely that the creditor mills would be paid in full. However, it was agreed amongst them to reduce the interest rate accrued for the period from February 1, 1933, to December 31, 1933, from 6 per cent to 4 per cent and settlement was finally made on this basis.

In October, 1935, during taxpayer's fiscal year ended March 31, 1936, Hunter received the sum of $1,000,000 in payment of a debt due it, and thereupon, if not before, Hunter became completely solvent and there was no reasonable doubt of the collectibility of the debts owing the taxpayer and other creditors.

In the meantime, the taxpayer treated the interest on the debt in the following manner: For the fiscal year ended March 31, 1933, the taxpayer included all of the interest except $302.19 as income in its return, which indicated a net loss for the year.

For the fiscal year ended March 31, 1934, the taxpayer did not accrue or report in its tax return any interest on its credit balance with Hunter.

In October, 1934, the taxpayer received from Hunter two notes dated July 1, 1934—one for the principal and interest due January 31, 1933, less payments on principal to June 30, 1934, and the other for interest from January 31, 1933, to June 30, 1934, in the sum of $16,443.50 payable January 31, 1936. The taxpayer allocated the amount of the latter note on its books as follows:

February 1, 1933 to March 31, 1933 ....................... $ 3,156.72
April 1, 1933 to March 31, 1934   11,409.57
April 1, 1934 to June 30, 1934...    1,877.21

$16,443.50

For the fiscal year ended March 31, 1935, the taxpayer reported as income in its return for that year the sum of $1,877.21 as well as all other interest accruing on the account for that year. For the fiscal year ended March 31, 1936, the taxpayer reported interest accruing on the debt as income for that year and this action was approved by the Commissioner.

During the fiscal year ended March 31, 1937, as we have seen, the taxpayer received payment of the note for $16,443.50 but reported no part of this amount as income in its return for that year. Interest on this note which accrued during the fiscal years 1935, 1936 and 1937 was accrued on the taxpayer's books and reported as income for these years.

At the end of 1936 and the beginning of 1937 the Commissioner investigated the tax-

payer's return for the year ended March 31, 1935, and proposed the inclusion of the sum of $11,711.76 as income for that year; but the taxpayer protested on the ground that this sum was not income in 1935 but in 1933 as to $302.19 and in 1934 as to $11,409.57. The Commissioner took the position that if the amount was not properly includable as income for the year 1935, it should be returned for the year 1937 when Hunter paid its note. Ultimately, the amount was excluded from income in determining the tax liability for the year 1935. The taxpayer has adhered to its position and has made no agreement with the Commissioner as to the year in which the sum of $11,711.76 should be included in income. All the years before 1937 are now barred by the statute of limitations.

From this statement of fact it appears that the substantial question is whether the sum of $11,409.50, allocated on the books of the taxpayer for interest on the indebtedness for the fiscal year ended March 31, 1934, is taxable as income for the fiscal year ended March 31, 1937, when it was received. On the part of the taxpayer it is contended that the interest was taxable income in the year in which it was accruable and that upon the facts it was accruable in 1934 although not received until 1937. On the part of the Commissioner it is contended that the sum received was not accruable in the fiscal year 1934 because at that time there was reason to doubt that the interest on the balance due by Hunter to the taxpayer could be collected, and hence its inclusion in income should be deferred to the year when it was actually received.

█ The parties are in agreement that interest is ordinarily accruable when the right to receive it is fixed, and not when it is actually received; but that it is not accruable as long as reasonable doubt exists as to the amount that is collectible by reason of the financial condition or insolvency of the debtor. Spring City Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; H. Liebes & Co. v. Commissioner, 9 Cir., 90 F.2d 932; Corn Exchange Bank v. United States, 2 Cir., 37 F.2d 34; Jamaica Water Supply Co. v. Commissioner, 2 Cir., 125 F.2d 512. Bearing this rule in mind, it seems clear that the interest on the Hunter debt was not accruable in the year ended March 31, 1933; and while the situation in the year ended March 31, 1934, is not free from doubt, there is evidence to support the Board's conclusion that the collectibility of the item was still open to reasonable question in that year. On the other hand, the collectibility of the item was established beyond all reasonable doubt not later than the fiscal year 1936, as the Board found, for in that year Hunter collected a sufficient sum to pay all of its debts in full. The controversy is therefore reduced to the single question whether a taxpayer on an accrual basis, who does not accrue a debt in the tax year when it is due and owing because of reasonable doubt as to its collectibility, must accrue and report it in a later year as soon as its collectibility is established, or defer its inclusion until the year when it is actually received.

█ There are no decisions directly in point, but in our view the debt should be accrued and reported as income when its collectibility is assured. This procedure is in harmony with the principle of accrual accounting which regards the right to receive, accompanied by collectibility, as the criterion; and it accords with the decisions which hold that as soon as the right to receive is fixed, as in cases where the taxpayer's claim is in litigation, the taxpayer must accrue and report the debt as income even though it is not paid until a later date. See, H. Liebes & Co. v. Commissioner and Jamaica Water Supply Co. v. Commissioner, supra. It may well be that in the general course of events the collectibility of a doubtful item does not become so certain as to require its accrual until collection is made, and this may account for the statement of the court in Corn Exchange Bank v. United States, supra, when holding that uncollectible income should not be accrued, that when and if such income is received, it must then be returned. But, this holding serves merely to accentuate the unusual fact in this case that the complete solvency of the debtor became practically certain at least a year before the debt was paid, so that its accruability was then established.

The situation bears some similarity to the collection of a bad debt previously charged off by a taxpayer on an accrual basis and included in income in the year when it is received, and it is suggested that the analogy is so close as to require similar treatment in this case. Cf. Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320. But, there are also marked differences. A reasonable doubt as to the collectibility of a debt is sufficient to justify its nonaccrual as income, but a debt may not be charged off

as a loss unless it is deemed to be worthless. Furthermore, the regulations provided, Regulations 94, Article 23(k)-1 and Article 42-(1) that a bad debt previously charged off must be included in gross income for the year in which received, and the statute now makes the same provision. Revenue Act of 1942, § 116(a), 56 Stat. 812, 26 U.S.C.A. Int.Rev.Code, § 22(b) (12). No similar provision exists with respect to doubtful debts which for good reason the taxpayer fails to accrue.

 It is pointed out that considerable discretion is lodged in the Commissioner by § 41 of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code, § 41, to make such a computation as will clearly reflect the taxpayer's income, if the taxpayer's method of accounting does not do so. See, Lucas v. American Code Co., 280 U.S. 445, 449; 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. But, it can hardly be said that this authority empowers the Commissioner to add to the taxpayer's gross income for a given year an item which rightfully belongs to an earlier year under the recognized system of accrual accounting. We are merely brought back to the original inquiry whether the item in controversy was accruable prior to the tax year 1937.

It is obvious that the effort of the Commissioner in this case is inspired by the motive to prevent the application of the statute of limitations and the avoidance of the tax upon the item under consideration. There was, however, no act or omission on the part of the taxpayer that now estops it from pleading the statute. From the first the taxpayer's position has been that the item was accruable in 1934 and as we have seen, the whole matter was the subject of discussion between the Commissioner and the taxpayer as early as 1936, long before the Commissioner's notice of deficiency that issued on May 24, 1941. Since the Commissioner did not make a timely assessment, we have no alternative but to give effect to the statute. Under the facts of the case there is no basis for the equitable principle that has sometimes been given effect that one who takes a position to his advantage with respect to an item of income in one tax year may not thereafter shift to a contrary position when correction of the earlier year is barred. See, Orange Securities Corp. v. Commissioner, 5 Cir., 131 F.2d 662. All that can be urged against the taxpayer is its failure to report the interest as income when it became accruable; but the omission from income of an amount properly includable therein does not nullify the limitation upon assessment and collection of taxes specified by the statute. On the contrary, an omission is expressly covered, for even if the omitted amount exceeds 25 per cent of the amount of gross income stated in the return, the only effect is to enlarge the period of limitations from three to five years. See the Revenue Act of 1936, § 275, 49 Stat. 1726, 26 U.S.C.A. Int.Rev. Code, § 275.

The decision of the Tax Court will be reversed.